IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SYCAMORE BREWING, LLC,

    Plaintiff,

v.

STONE BREWING CO., LLC,

    Defendant.

Case No. 3:22-cv-00148

## MOTION FOR A TEMPORARY RESTRAINING ORDER

## AND PRELIMINARY INJUNCTION

W. Michael Boyer
CAROLINA CRAFT LEGAL
6502 Birkdale Drive
Greensboro, North Carolina 27410
Tel: (336) 944-2132
Email: michael@carolinacraftlegal.com

Marc J. Randazza (*pro hac vice* forthcoming)
Ronald D. Green (*pro hac vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff
Sycamore Brewing, LLC

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **1.0** | **INTRODUCTION** | **1** |
| **2.0** | **STATEMENT OF RELEVANT FACTS** | **1** |
| 2.1 | PLAINTIFF SYCAMORE AND ITS KEEP IT JUICY MARK | 1 |
| 2.2 | DEFENDANT STONE AND ITS INFRINGING USE | 3 |
| **3.0** | **LEGAL STANDARD** | **5** |
| **4.0** | **LEGAL ARGUMENT** | **5** |
| 4.1 | SYCAMORE IS LIKELY TO SUCCEED ON THE MERITS | 5 |
| 4.1.1 | Trademark Infringement | 6 |
| 4.1.2 | Unfair Competition | 10 |
| 4.1.3 | Deceptive Trade Practices | 11 |
| 4.2 | SYCAMORE WILL BE IRREPARABLY INJURED IF INJUNCTIVE RELIEF DOES NOT ISSUE | 12 |
| 4.3 | THE BALANCE OF EQUITIES TIPS STRONGLY IN SYCAMORE'S FAVOR | 13 |
| 4.4 | INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST | 13 |
| 4.5 | AT MOST, A MINIMAL BOND SHOULD BE REQUIRED | 13 |
| **5.0** | **CONCLUSION** | **14** |

# TABLE OF AUTHORITIES

**CASES**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ................................................................. 12, 13

*AMP Inc. v. Foy*,
  540 F.2d 1181 (4th Cir. 1976) ................................................................ 11, 13

*Anheuser-Busch, Inc. Customer Co.*,
  947 F. Supp. 422 (N.D. Cal. 1996) .......................................................... 10

*Bowe Bell & Howell Co. v. Harris*,
  145 Fed. Appx. 401 (4th Cir. 2005) ........................................................ 13

*Brittingham v. Jenkins*,
  914 F.2d 447 (4th Cir. 1990) ................................................................... 6

*Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*,
  606 F. Supp. 2d 571 (M.D. N.C. 2009) ................................................... 12

*CareFirst of Md., Inc. v. First Care, P.C.*,
  434 F.3d 263 (4th Cir. 2006) ................................................................... 7

*Dalton v. Camp*,
  353 N.C. 647, 548 S.E.2d 704 (2001) ..................................................... 11

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
  741 F. Supp. 2d 1165 (S.D. Cal. 2010) ................................................... 10

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
  314 F.2d 149 (9th Cir. 1963) ................................................................... 10

*George & Co. LLC v. Imagination Entm't Ltd.*,
  575 F.3d 383 (4th Cir. 2009) ................................................................... 8

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ................................................................. 8

*ITCO Corp. v. Michelin Tire Corp.*,
  722 F.2d 42 (4th Cir. 1983) ..................................................................... 11

*Lindner v. Durham Hosiery Mills, Inc.*,
  761 F.2d 162 (4th Cir. 1985) ................................................................... 11

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
  43 F.3d 922 (4th Cir. 1995) ..................................................................... 6, 9, 12

*Marshall v. Miller*,
 302 N.C. 539, 276 S.E.2d 397 (1981) ...................................................................................11

*Official Airline Guides, Inc. v. Goss*,
 6 F.3d 1385 (9th Cir. 1993) .....................................................................................................8

*People for the Ethical Treatment of Animals v. Doughney*,
 263 F.3d 359, 364 (4th Cir. 2001) .........................................................................................11

*Pierce v. Reichard*,
 163 N.C. App. 294, 593 S.E.2d 787 (2004) ..........................................................................11

*Pizzeria Uno Corp. v. Temple*,
 747 F.2d 1522 (4th Cir. 1984) .................................................................................................7

*Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*,
 799 F. Supp. 2d 558 (M.D. N.C. 2011) ................................................................................7, 9

*S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*,
 189 N.C. App. 601 (2008) .....................................................................................................11

*Sara Lee Corp. v. Kayser-Roth Corp.*,
 81 F.3d 455 (4th Cir. 1996) ..................................................................................................6, 9

*Scotts Co. v. United Indus. Corp.*,
 315 F.3d 264 (4th Cir. 2002) ............................................................................................12, 13

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*,
 110 F.3d 234 (4th Cir. 1997) ...................................................................................................6

*Southeastern Shelter Corp. v. BTU, Inc.*,
 154 N.C. App. 321, 572 S.E.2d 200 (2002) ..........................................................................11

*Synergistic Int'l, LLC v. Korman*,
 470 F.3d 162 (4th Cir. 2006) ................................................................................................6, 8

*TCPIP Holding Co. v. Haar Commc'ns*,
 244 F.3d 88 (2d Cir. 2001) ......................................................................................................9

*Toolchex, Inc. v. Trainor*,
 634 F. Supp. 2d 586 (E.D. Va. 2008) ......................................................................................6

*United States Jaycees v. Philadelphia Jaycees*,
 639 F.2d 134 (3d Cir. 1981) ....................................................................................................7

*Winter v. NRDC, Inc.*,
 555 U.S. 7 (2008) .....................................................................................................................5

**STATUTES**

15 U.S.C. § 1114 ..................................................................................................5, 6

15 U.S.C. § 1116 ....................................................................................................12

15 U.S.C. § 1125 .....................................................................................................5

G.S. § 75-1.1 ......................................................................................................5, 11

G.S. § 80-12 ...........................................................................................................11

**RULES**

Fed. R. Civ. P. 65....................................................................................................5

## MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Sycamore Brewing, LLC ("Sycamore") seeks a temporary restraining order and a preliminary injunction ordering Defendant Stone Brewing Co., LLC ("Stone"), to cease marketing its Hazy IPA beer using the KEEP IT JUICY mark.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0 INTRODUCTION

Plaintiff Sycamore is a craft brewery headquartered in Charlotte, North Carolina. Since about May of 2020, Sycamore has marketed its Juiciness IPA with the slogan KEEP IT JUICY. It registered the trademark with the United States Patent and Trademark Office, giving it the exclusive right to use KEEP IT JUICY in connection with beer.

Defendant Stone is one of the largest craft breweries in the world. While Stone was once a pillar of the craft beer community, it has turned decidedly anticompetitive by asserting meritless trademark actions against smaller breweries in order to financially harm them[1] and now by stealing the trademarks and brands of smaller breweries.

### 2.0 STATEMENT OF RELEVANT FACTS

#### 2.1 Plaintiff Sycamore and its KEEP IT JUICY Mark

Plaintiff Sycamore was founded in 2013 in Charlotte. (Declaration of Justin Tawse Brigham ("Sycamore Decl."), attached as **Exhibit 1**, at ¶ 4.) Sycamore sells high quality craft beer. (*Id.* at ¶ 5.) The company is headquartered in Charlotte and distributes its beers throughout North Carolina and across seven other states, and continues to expand its market. (*Id.* at ¶¶ 6-7.)

Sycamore has a reputation for brewing high quality and unique beers. (*Id.* at ¶ 10.) Juiciness IPA is one of Sycamore's most popular beers and has been since its introduction in 2019. (*Id.* at ¶ 12.) Juiciness is sold in eight states and is renowned by IPA drinkers. (*Id.* at ¶ 13)

---

[1] As will be discussed, Stone has filed well over 100 trademark cancellation actions of dubious merit with the USPTO in order to harm businesses in the beer, wine, and spirits industries and, at times, businesses outside of those industries.

Sycamore's KEEP IT JUICY slogan is the most prominent feature on the Juiciness IPA retail packaging.



Sycamore owns the mark KEEP IT JUICY (U.S. Reg. No. 6,464,651) in Class 32 for "Beer; Beer, ale, and lager; Craft beer." (KEEP IT JUICY registration, attached as **Exhibit 2**.) Sycamore applied for the KEEP IT JUICY mark on May 1, 2020 and first used it on its retail packaging on September 12, 2020. (*See id.*) The USPTO granted registration on August 24, 2021. (*Id.*)

Sycamore owns the exclusive right to use the KEEP IT JUICY trademark in connection with beer and craft beer services. The KEEP IT JUICY mark is distinctive in the United States for Sycamore's craft beer. Sycamore has made substantial investment in the promotion and protection of the KEEP IT JUICY mark and it is one of its most important assets. (Sycamore Decl. at ¶ 16.) The mark identifies Sycamore as the source of its product. (*Id.*) The mark is widely recognized among consumers, has frequently been featured in advertising over the years, and is famous and distinctive among the consuming public, serving to distinguish Sycamore's Juiciness India Pale Ale beer products from competitors' beers. (*Id.* at ¶ 18.)

The KEEP IT JUICY mark is part of a family of marks Sycamore uses. It markets its Haziness IPA with the KEEP IT HAZY mark, (Registration No. 6,464,692). (KEEP IT HAZY registration certificate, attached as **Exhibit 3.**) Sycamore markets its Strawberry Lemonade Gose with the phrase KEEP IT SQUEEZY. The KEEP IT JUICY, KEEP IT HAZY, and KEEP IT SQUEEZY marks are all featured prominently on Sycamore's packaging, so that customers

associate the KEEP IT family with Sycamore. (Sycamore "Our Brews" page, attached as **Exhibit 4**.)[2] Stone misappropriated KEEP IT JUICY in order to confuse customers looking for Sycamore's beer.

### 2.2 Defendant Stone and Its Infringing Use

Defendant Stone is a huge national brewery. Sycamore and Stone are direct competitors in North Carolina, South Carolina, Virginia, West Virginia, Tennessee, Ohio, Georgia, and Kentucky. (Sycamore Decl. at ¶¶ 6 & 7.)

Stone has a reputation for aggressively protecting its intellectual property. (Geigner, Timothy, "Stone Brewing Is Very Upset That People Don't Like Its Trademark Bullying," *TechDirt* (July 29, 2020),[3] attached as **Exhibit 5**.) It has been accused of using its size and money to bully smaller companies that use terms that are even remotely similar to its marks. (*Id.*) Stone is properly described as a "Trademark Bully."[4]

Stone has issued over 100 trademark cancellation requests. (*See* Chan, Tristan, "Stone Brewing Disputes Trademarks with Kentucky Brewery & 100 Other Brands," *Porch Drinking* (July 21, 2020),[5] attached as **Exhibit 6**.) Stone targeted every single company in these industries that used the words "stone" or "bastard" in any manner, such as "Touchstone Brewing," "Stoney's Pub," "Holystone Distilling," "Stonypoint," and "Lucky Bastardo." Stone even went after the trademarks of businesses that were not in the beer, wine, or spirits industries, such as "Stonerfoods," "Stoney River Steakhouse & Grill," and the "Preppybastard" t-shirt company. (TTAB Search for "STONE BREWING CO., LLC", attached as **Exhibit 7**.)

---

[2] Available at: <https://www.sycamorebrew.com/our-brews> (last accessed Apr. 6, 2022).
[3] Available at: <techdirt.com/2020/07/29/stone-brewing-is-very-upset-that-people-dont-like-trademark-bullying/ > (last accessed Apr. 4, 2022).
[4] The USPTO defines this term as "a trademark owner that uses its trademark rights to harass and intimidate another business beyond what the law might be reasonably interpreted to allow." *See* U.S. Secretary of Commerce, "Trademark Litigation Tactics and Federal Government Services to Protect Trademarks and Prevent Counterfeiting", Report to Congress (Apr. 2011) at p. 15, n. 51, available at: https://www.uspto.gov/sites/default/files/trademarks/notices/TrademarkLitigationStudy.pdf.
[5] Available at: <porchdrinking.com/articles/2020/07/21/stone-brewing-disputes-trademarks-with-kentucky-brewery-100-other-brands> (last accessed Apr. 4, 2022).

Stone's founder publicly wrote that responsible companies check the USPTO before they commence use of a new brand or slogan. Stone thus willfully and knowingly infringed on Sycamore's mark. In July of 2020, Sawstone Brewing Co. tried to register its name. Stone founder, Greg Koch, castigated Sawstone for not noticing Stone's "prior registrations on the USPTO's website and the fact that [Stone is] known for taking the necessary steps to protect [its] marks." (Koch, Greg, "In Response to the Wildly Irresponsible Actions of Local Pioneers/Sawstone Brewing," *Stone Brewing Blog* (July 27, 2020),[6] attached as **Exhibit 8**.) He said Sawstone should "have done a name availability search [on the USPTO website] …for maybe a couple of hundred bucks. If that. But they put their Choose A Name cart before their Take A Moment And Look It Up First horse." (*Id.*)

On March 23, 2022, Sycamore discovered that Stone had stolen its intellectual property and was using the KEEP IT JUICY mark in an infringing manner. (Sycamore Decl. at ¶ 22.)

Stone uses the KEEP IT JUICY mark on the Hazy IPA page on its website, as seen below.



---

[6] Available at: <stonebrewing.com/blog/miscellany/2020/response-wildly-irresponsible-actions-local-pioneers-sawstone-brewing> (last accessed Apr. 4, 2022).

Stone is using the KEEP IT JUICY mark in video advertising for Hazy IPA, as evidenced by a screenshot from a video advertisement Stone posted to YouTube.



Defendant Stone's use of the KEEP IT JUICY mark will cause confusion among the consuming public, who will falsely believe that Stone's Hazy IPA is related to Sycamore's Juiciness IPA. Stone is using the KEEP IT JUICY mark without Sycamore's consent, approval, or authority. Stone is attempting to capitalize on the goodwill Sycamore has developed by using the exact mark on an inferior product.

### 3.0   LEGAL STANDARD

A temporary restraining order or preliminary injunction must: (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. *See* Fed. R. Civ. P. 65(d).

Injunctive relief is proper when: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm; (3) the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

### 4.0   LEGAL ARGUMENT

#### 4.1   Sycamore is likely to succeed on the merits

Sycamore brings three claims: (1) Trademark Infringement - 15 U.S.C. § 1114; (2) Unfair Competition under 15 U.S.C. § 1125(a); and (3) Deceptive Trade Practices under G.S. § 75-1.1.

### 4.1.1 Trademark Infringement

Sycamore must establish that (1) it has a valid trademark; (2) its mark can be protected; and (3) the defendant's use of an imitation is likely to cause consumer confusion. 15 U.S.C. § 1114(a); *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). The plaintiff must show that (1) the mark has been used in a manner that its nature and function are apparent and recognizable without extended analysis; (2) the plaintiff registered and owns the mark; and (3) the plaintiff is exclusively entitled to use the mark in commerce. 15 U.S.C. § 1114(1); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995).

An affidavit from the plaintiff that it uses its trademarks in advertisements is sufficient to indicate the trademark's nature and function. *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008). Moreover, registration with the USPTO is *prima facie* evidence "of the validity of the mark, ownership by the registrant, and proper registration under the Lanham Act." *Brittingham v. Jenkins*, 914 F.2d 447, 452 (4th Cir. 1990). Sycamore has provided an affidavit that it uses the KEEP IT JUICY mark in advertising and that it has been continuously doing so since September of 2020. Moreover, it possesses registered rights acknowledged by the USPTO in August of 2021. Its registered rights relate back even further – to May 1, 2020, well more than a year before Stone introduced the beer it markets under the infringing mark.

To analyze likelihood of confusion, Courts consider: (1) the strength and distinctiveness of the mark; (2) the similarity of the marks; (3) the similarity of the goods or services; (4) the similarity of the facilities used by the parties in conducting business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent; (7) actual confusion; (8) proximity of the products as they are sold; (9) probability that the plaintiff will "bridge the gap" and enter the defendant's market; (10) quality of the plaintiff's product compared with the defendant's; and (11) the sophistication of the consumer. *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 241-42 (4th Cir. 1997); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996). These factors are not exhaustive nor exclusive, and not all factors need to be considered by the Court. *Shakespeare*, 110 F.3d at 242; *Sara Lee*, 81 F.3d at 463.

**Strength or Distinctiveness of Plaintiff's Mark.** This is the "paramount factor" in the likelihood of confusion analysis. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). Here, the court should examine "the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269, 271 (4th Cir. 2006). The "strength" of the mark is the degree "to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *Id.* at 269. Strength is evaluated in terms of the marks' conceptual and commercial strength. *See id.* Courts have assigned marks into four groups in an ascending order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.

At the very least, KEEP IT JUICY is suggestive and not descriptive. When heard by the consumer, she will not initially equate "keep it juicy" with beer. Rather, she is more likely to associate it with fruit juice, not a beer. KEEP IT JUICY has significant conceptual strength.

The commercial strength inquiry "looks at the marketplace and asks if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or enterprise." *CareFirst*, 434 F.3d at 269. Since its introduction, Sycamore has sold tens of thousands of pints and tens of thousands of cans of Juiciness IPA. Anyone purchasing cans of Juiciness IPA has seen the KEEP IT JUICY mark on its packaging. The mark and term was associated with Sycamore before Stone decided to steal it. This factor weighs heavily in Sycamore's favor.

**Similarity of the marks.** Here, the two marks are identical. Sycamore uses the phrase KEEP IT JUICY to advertise its Juiciness IPA, while Stone uses the phrase KEEP IT JUICY to advertise its Hazy IPA. When the infringer uses the exact trademark, there is a "great likelihood of confusion." *Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 571-72 (M.D. N.C. 2011) (*quoting United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981)). This factor is in Plaintiff's favor.

**Similarity of the goods and services.** The goods offered by Plaintiff Sycamore and Defendant Stone are not merely related or similar; they are the same. Both use the mark to advertise

and market a specific style of beer—in this case, the India Pale Ale or "IPA"—leaving this factor in Sycamore's favor. *See Synergistic Int'l LLC v. Korman*, 470 F.3d 162, 172-73 (4th Cir. 2006).

**Similarity of facilities employed, and advertising used, by mark holder.** The parties' channels of trade are the same. Both parties utilize a network of wholesale distributors—in a few instances, the same wholesale distributors—to access the retail beer markets attendant to chain retail, convenience and grocery stores, bottle shops, restaurants, and bars. The parties also use the mark in the same manner on advertising. The most likely way a consumer will encounter Sycamore's KEEP IT JUICY mark is on its packaging. KEEP IT JUICY is the most prominent part of that packaging. Stone's infringing use of KEEP IT JUICY is also the most prominent part of its packaging. Both Sycamore and Stone respectively advertise the Juiciness IPA and Hazy IPA beers on social media and the Internet. Stone uses the mark in the exact same places as Sycamore. This factor favors Sycamore.

**Defendant's intent.** Stone has a reputation for zealously protecting its intellectual property rights. It clearly has attorneys scouring the USPTO's website looking for infringements (or perceived infringements) of Stone's trademarks. Stone's very founder has written articles ridiculing anyone who fails to check the USPTO website before introducing a new brand or slogan. Therefore, it is presumably Stone's practice to do so. Additionally, Stone sells its beer in the same markets where Sycamore markets and sells its craft beer and could not plausibly argue ignorance as to which marks its direct competitors are using.

"[O]ne intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as to deliberately induce confusion." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009); *see Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013) (noting that "[w]hen an alleged infringer knowingly adopts a mark identical or similar to another's mark, 'courts will presume an intent to deceive the public'") (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)). Stone's infringing use of KEEP IT JUICY strongly resembles Sycamore's use. Both are prominently featured on beer packaging. Additionally, Sycamore' KEEP IT JUICY mark uses an

ordinary font for "keep it," while the word "juicy" is fanciful and looks like someone smashed a fruit or spilled juice. Stone's infringing use looks almost exactly the same. Stone intended for consumers to confuse its Hazy IPA with Sycamore's Juiciness IPA.

**Actual confusion.** Plaintiff Sycamore is not required to show actual confusion, only the likelihood of confusion. *Sara Lee*, 81 F.3d at 463 (holding that "evidence of actual confusion is unnecessary"); *Lone Star*, 43 F.3d at 463.

**Proximity of products as actually sold.** Both Sycamore and Stone sell the products in question in North Carolina, South Carolina, Virginia, West Virginia, Tennessee, Ohio, Georgia, and Kentucky. They are sold in the same chain retail, convenience and grocery stores, bottle shops, restaurants, and bars, often in close proximity to one another. Stone's infringing packaging box with its infringing use of KEEP IT JUICY could sit on the shelf of a store directly next to Sycamore's legitimate packaging box. In fact, the parties' products often sit directly beside or above/below one another in the retail markets in which the parties overlap. (*See* photos of Sycamore and Stone products on store shelves, attached as **Exhibit 9**.) Beer taps for the parties' products, where consumers may purchase the parties' beers without the assistance of identifying packaging, are typically place directly next to each other. (*See* photo of beer taps, attached as **Exhibit 10**.) This factor heavily favors Sycamore.

**Likelihood the mark holder will "bridge the gap" and enter the defendant's market.** Here, Plaintiff Sycamore does not need to "bridge the gap." The parties are already in the same market. They are both well-known craft breweries. This indicates "a greater likelihood of confusion as there [is] no gap to be bridged." *Rebel Debutante*, 799 F. Supp. 2d at 578 (*citing TCPIP Holding Co. v. Haar Commc'ns*, 244 F.3d 88, 102 (2d Cir. 2001)).

**Quality of Defendant's product.** This factor is typically important in cases involving counterfeit or knockoff goods. *See Sara Lee*, 81 F.3d at 467. That is not present here. While Sycamore believes that Juiciness IPA is a better craft beer than Stone's Hazy IPA (and the consuming public seems to agree), this factor is legally neutral.

**Sophistication of the consuming public.** This favors Sycamore. Beer drinkers are walking down supermarket aisles, looking for their favorite beer. They might even know that they are looking to buy an IPA from Sycamore with KEEP IT JUICY on the box. In that case, there is a very strong possibility that they will see Stone's IPA box and be confused. Someone purchasing a case of beer is unlikely to study the packaging closely before buying beer, once the visual signals have been received that "this is the beer you are looking for." Only a trademark infringer or a Jedi would have the wherewithal to perform the mind trick that Stone is trying to perform – to convince one of Sycamore's customers that "*this is the beer you are looking for.*"

Stone itself has argued that the average beer purchaser "would probably not concern himself about any such detail" as who was "actually brewing and bottling" or "whether it was being produced under their supervision or pursuant to some other arrangement," *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159-60 (9th Cir. 1963), and that "because beer is a relatively inexpensive product, consumers are not likely to use greater care in selecting beer," *Anheuser-Busch, Inc. Customer Co.*, 947 F. Supp. 422, 425 (N.D. Cal. 1996), and that even regarding "premium" drinks, a "purchase is made on impulse by consumers while they are in store," *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (S.D. Cal. 2010). *See* Memo of Points and Authorities in Support of Motion for Preliminary Injunction in *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-cv-0331-BEN-JMA, Doc. No. 30-1, at 26. Stone also convincingly argued that the average consumer was not meaningfully more sophisticated simply because "craft" beers were involved. *Id*. at 27-28. Plaintiff agrees.

### 4.1.2 Unfair Competition

The test for likelihood of success on an unfair competition claim under the Lanham Act is essentially the same as the test for trademark infringement and requires the plaintiff to show that: "(1) it possesses a mark; (2) the defendant used the mark; (3) defendant's use of the mark occurred in commerce; (4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods and services; and (5) defendant used the mark in a manner

likely to confuse consumers." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). Plaintiff Sycamore has established each of these factors.

Sycamore owns a federal registration with the USPTO for the mark. Stone used the KEEP IT JUICY mark in the exact same manner that Sycamore does. Stone's use occurred in commerce, as it used the slogan to market, advertise, and sell its Hazy IPA. Finally, the likelihood of confusion analysis strongly favors Plaintiff Sycamore. It is likely to succeed on the merits of this claim.

### 4.1.3 Deceptive Trade Practices

North Carolina Gen. Stat. § 75-1.1 declares that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are … unlawful." The prohibitory scope of the act "is potentially quite broad." *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 48 n.10 (4th Cir. 1983). The purpose behind the enactment of § 75-1.1 "was the protection of the consuming public." *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165 (4th Cir. 1985) (*citing Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981)).

Under the state law, the plaintiff must allege sufficient facts to show that (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question affected commerce; and (3) act proximately caused injury to the plaintiff. *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 607 (2008) (*citing Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). An "unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). An act is additionally declared unfair or deceptive if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Pierce v. Reichard*, 163 N.C. App. 294, 301, 593 S.E.2d 787, 791-92 (2004).

Acts of trademark infringement are *per se* unfair and deceptive trade practices. N.C. Gen. Stat. § 80-12. After all, as with Section 75-1.1, trademark law is meant to protect the public. *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976). Given that Sycamore owns a registration for KEEP IT JUICY and that Stone is using the mark in the exact same manner for a very similar product, Sycamore is likely to prevail on this claim. Injunctive relief should issue.

**4.2    Sycamore will be irreparably injured if injunctive relief does not issue**

In cases involving trademark infringement, the plaintiff is "entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits for a violation … in the case of a motion for preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a). The Fourth Circuit has recognized that "irreparable injury regularly follows trademark infringement." *Lone Star*, 43 F.3d at 939. Courts in this circuit routinely find that the irreparable injury requirement is satisfied when the mark owner demonstrates that its competitor's advertising tends to mislead consumers. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 n.3 (4th Cir. 2002).

Here, Plaintiff is entitled to a presumption that it will be irreparably harmed, and injunctive relief must issue. Stone is using the exact same mark for the exact same purpose to sell incredibly similar products. If allowed to continue, Stone's conduct will mislead consumers and thereby cause permanent damage to Sycamore's reputation. Consumers will be deceived into thinking Defendant's beer comes from the same brewery as Sycamore's higher-quality product. Moreover, when consumers drink Stone's product cloaked in Sycamore's trademark and brand, their inferior experiences will mistakenly be "with Sycamore's product." Sycamore's reputation will be indelibly tied to these inferior consumer experiences drinking Stone's knockoff. Thus, consumers may be forever dissuaded from and turned off to Sycamore's original product, and subsequently decide not to "Keep It Juicy," let alone to "Keep It Hazy" or "Keep It Squeezy." No amount of money could completely fix this damage.

Furthermore, Sycamore is suffering from "reverse confusion."  A company never has a second chance to make a first impression. The doctrine of reverse confusion was thus created to "protect[] smaller senior users against larger more powerful companies who want to use identical or confusingly trademarks." *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 585 (M.D. N.C. 2009) (*quoting A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 228 (3d Cir. 2000)). In instances of reverse confusion, "the junior user saturates the

market with a similar trademark and overwhelms the senior user." *A&H Sportswear, Inc.,* 237 F.3d at 228.

Stone is a craft beer giant—the 9th largest in the United States.. While Sycamore distributes its products in eight states, consumers in the remaining 42 will see KEEP IT JUICY on Stone's beer packaging and erroneously associate Sycamore's trademark and brand with Stone. Not only is Stone depriving Sycamore of its opportunities to expand into larger markets, it is saturating Sycamore's existing market and overwhelming the trust and stewardship Sycamore fights every day to earn and maintain for its loyal customers.

### 4.3     The balance of equities tips strongly in Sycamore's favor

There will be no harm to Stone if this Court enjoins it from using Plaintiff Sycamore's KEEP IT JUICY trademark. It simply will not be permitted to profit off of Sycamore's goodwill in that mark or to deceive Sycamore's customers. Stone's use of Sycamore's mark is likely to affect consumers' opinion of Sycamore. Sycamore's reputation will be permanently damaged if Stone continues to use its registered trademarks and consumers associate Sycamore with Stone.

### 4.4     Injunctive relief is in the public interest

Finally, injunctive relief is in the public interest. The purpose of trademark law is to protect the public from confusion about "the identity of the enterprise from which goods and services are purchased." *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976). Preventing consumers from being confused and preventing trademarks from being used deceptively serve the public interest. *Bowe Bell & Howell Co. v. Harris*, 145 Fed. Appx. 401, 404 (4th Cir. 2005).

### 4.5     At most, a minimal bond should be required

A bond should only be required if the enjoined party will suffer any harm from the issuance of the injunction. *Scotts Co.*, 315 F.3d at 285. Defendant will suffer no damage if it is enjoined from using a pilfered mark. The injunction will repair the status quo.  If a bond is required, it should be no more than $500.

## 5.0 CONCLUSION

Plaintiff Sycamore requests that the Court issue a temporary restraining order, to be converted into a preliminary injunction, prohibiting Stone from using the KEEP IT JUICY name and mark, or confusingly similar variations thereof.

## CERTIFICATION OF COMPLIANCE

Undersigned counsel hereby certifies, subject to Fed. R. Civ. P. 11, that this Motion complies with the word limitation of the Standing Order of the Honorable Frank D. Whitney, ¶3(b)(iv). Specifically, this Motion, excluding the case caption, table of contents, table of authorities, and certificates of counsel, is 4,423 words in length.

Dated: April 8, 2022.

Respectfully Submitted,

/s/ W. Michael Boyer
W. Michael Boyer
CAROLINA CRAFT LEGAL
6502 Birkdale Drive
Greensboro, North Carolina 27410
Tel: (336) 944-2132
Email: michael@carolinacraftlegal.com

Marc J. Randazza (*pro hac vice* forthcoming)
Ronald D. Green (*pro hac vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff
Sycamore Brewing, LLC