IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SYCAMORE BREWING LLC,

    Plaintiff,

v.

STONE BREWING CO., LLC,

    Defendant.

Case No. 3:22-cv-00148

# DEFENDANT STONE BREWING CO., LLC'S OPPOSITION
# TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## Table of Contents

I. BOTTOM LINE UP FRONT ..................................................................................... 1

II. INTRODUCTION ...................................................................................................... 1

III. FACTUAL BACKGROUND ..................................................................................... 4

IV. ARGUMENT .............................................................................................................. 6

    A. Sycamore Cannot Show It Is Likely to Succeed on the Merits of Its Trademark Claims .............................................................................................................. 7

        1. "KEEP IT JUICY" Is Invalid and Cannot Be Protected ............................. 7

        2. There is No Evidence of Actual or Likely Confusion ................................. 8

        3. Sycamore's Related Unfair Competition and State Law Claims Fail for Similar Reasons ....................................................................................... 12

    B. Sycamore Will Not Suffer Any Irreparable Injury ................................................ 12

    C. The Balance of Equities Strongly Disfavors an Injunction ................................... 13

    D. The Public Interest Counsels Strongly Against an Injunction .............................. 14

    E. A Significant Bond Is Necessary for Any Injunction ........................................... 14

V. CONCLUSION ......................................................................................................... 15

# Table of Authorities

**CASES**

*Anheuser-Busch, Inc. v. L&L Wings, Inc.*,
  962 F.2d 316 (4th Cir. 1992) .................................................................................... 2, 10

*Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*,
  452 F. App'x 351 (4th Cir. 2011) ...................................................................................... 3

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
  952 F.2d 802 (4th Cir. 1991) ............................................................................................ 3

*Genesee Brewing Co. v. Stroh Brewing Co.*,
  124 F.3d 137 (2d Cir. 1997) ............................................................................................. 7

*George & Co. LLC v. Imagination Ent. Ltd.*,
  575 F.3d 383 (4th Cir. 2009) .......................................................................................... 11

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
  49 F.3d 1551 (Fed. Cir. 1995) .................................................................................... 3, 12

*In re Microsoft Corp. Antitrust Litig.*,
  333 F.3d 517 (4th Cir. 2003) ................................................................................. 3, 6, 14

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ............................................................................................ 6

*PETA v. Doughney*,
  263 F.3d 359 (4th Cir. 2001) .................................................................................... 10, 12

*Rebel Debutante LLC v. Forsythe Cosm. Grp., Ltd.*,
  799 F. Supp. 2d 558 (M.D.N.C. 2011) ............................................................................. 7

*Shakespeare Co. v. Silstar Corp. of Am.*,
  110 F.3d 234 (4th Cir. 1997) .................................................................................. 8, 9, 11

*T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*,
  821 F.2d 646 (Fed. Cir. 1987) ................................................................................... 12, 13

**STATUTES**

15 U.S.C. § 1111 ...................................................................................................................... 1
15 U.S.C. § 1114 ...................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 65(c) ............................................................................................................... 14

Stone Brewing Co., LLC ("Stone") respectfully submits this opposition to the motion for a preliminary injunction filed by Sycamore Brewing, LLC ("Sycamore").

## I. BOTTOM LINE UP FRONT

Sycamore has taken the extraordinary measure of requesting mandatory injunctive relief because it is unhappy that Stone sold beer packaged with the phrase "Keep It Juicy." Sycamore incorrectly contends that it holds a valid trademark over that phrase, despite the fact that it did not bother to identify that phrase with a TM or ® symbol on its own packaging and that "juicy" is a commonly used descriptive term for IPAs. Because Sycamore cannot show any likelihood of confusion amongst craft beer consumers, and has already acknowledged that money damages are sufficient to address any harm, Sycamore's motion for preliminary injunction should be denied.

## II. INTRODUCTION

Defendant Stone is an award-winning craft brewer with brewing facilities in Escondido, California and Richmond, Virginia. Plaintiff Sycamore seeks an extraordinary prior restraint to enjoin Stone from using the phrase "Keep It Juicy" to accurately describe Stone's Hazy IPA beer. Sycamore does so, however, absent any of the evidence a trademark plaintiff generally presents in support of such relief, *viz*, a consumer survey showing likelihood of confusion, market data and expert testimony regarding the marks, statements by consumers or industry professionals, and evidence of the mark's strength and recognition. Instead, Sycamore relies almost entirely on its naked trademark registration (which is less than a year old) and neglects to advise the Court that (a) the term "juicy" is commonly used throughout the industry to describe a hoppy IPA style of beer, and (b) Sycamore considered the alleged mark so inconsequential that it never even identified it as protected intellectual property by attaching a TM or ® symbol on actual product packaging— a defect so fundamental that such a plaintiff cannot assert any claim for economic damages. *See*

1

15 U.S.C. §1111 (precluding economic damages where a trademark plaintiff has failed to use a registration symbol, absent actual notice to the defendant).

Sycamore's motion instead relies almost entirely on unsubstantiated allegations from a complaint evidently drafted to disparage Stone's business and to (successfully) generate dozens of press stories long before any effort was made at service. Stone had no idea that Sycamore had even filed this motion until after the Court directed Sycamore to "**immediately provide notice**" of the upcoming hearing. Sycamore's complaint was the first Stone had ever heard of Sycamore's use of the phrase KEEP IT JUICY—which is a generic (and not ownable) application of the English language for describing a category of beer.[1]

Sycamore's motion must fail for at least three basic reasons:

**1. Sycamore cannot show that it is likely to succeed on the merits of proving that Stone's use of the phrase "Keep It Juicy" is likely to cause confusion.** A trademark plaintiff must meet a very heavy burden before it may enjoin a competitor's free speech rights of contested words or phrases. Here, Sycamore has provided no evidence that any consumers have been or are likely to be confused and no expert evidence or consumer surveys. Stone's and Sycamore's beers have different brand names, different product names, and different packaging with different colors and different logos. Stone's Hazy IPA cans themselves—that is, the primary packaging—do not contain the "Keep It Juicy" phrase. Sycamore's complaint rests on an improper attempt to examine a snippet of packaging out of context from its surroundings—a practice firmly rejected by the Fourth Circuit. *See, e.g., Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992) (courts "must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer").

---

[1] *See* 2022 Brewers Association Beer Style Guidelines, Declaration of Douglas S. Curran Declaration ("Curran Decl.") Ex. 2.

2

Stone also was completely unaware that the generic phrase describing a category of IPA could ever be trademarked and had no knowledge of Sycamore's alleged mark. Dozens of IPAs have the word "juicy" in their name, and many more are described with that term. Even Sycamore's actions before it filed suit show it considered the phrase generic, as it consistently chose not to use a ® or ™ symbol to claim ownership.

2. **Sycamore Has Not Shown Any Harm, Much Less "Irreparable" Harm.**
Sycamore cannot show it faces anything approaching irreparable harm from Stone's use of "Keep It Juicy" on the side-flap of some packages of its Hazy IPA beer. Preliminary injunctions are "extraordinary interlocutory remedies" that are appropriate only where necessary "to protect the status quo and to prevent irreparable harm during the pendency of the litigation." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003) (vacating preliminary injunction where purported "irreparable harm" was not "sufficiently immediate"); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (irreparable harm must be "neither remote nor speculative, but actual and imminent"). Any hypothetical injury from Stone's use of the phrase "Keep It Juicy" is not "irreparable" under the law.

Moreover, Sycamore's founder Justin Brigham himself admitted in a press interview about this suit that Sycamore faced no irreparable injury—and, in fact, contended that a licensing deal with Stone would "cover the damages" of such claim.[2] His concession that money damages (without equitable relief) are sufficient to remedy Sycamore's supposed harm alone defeats this motion. *E.g.*, *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (denying preliminary injunction as "not normally available where the harm at issue can be remedied by money damages"); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,

---

[2] "Sycamore Founder: Stone Rejected Proposed Licensing Agreement; Charlotte Brewery to Seek Preliminary Injunction over 'Keep It Juicy' Trademark," *Brewbound*, Curran Decl. Ex. 1.

3

49 F.3d 1551, 1557 (Fed. Cir. 1995) (reversing preliminary injunction, finding lack of irreparable harm where plaintiff offered to license patent).

**3. The relative equities and public interest (and Stone's free speech rights) strongly weigh against an injunction**. The motion demands that Stone be ordered to undergo the costly and burdensome process of removing its Hazy IPA products from market. On the other hand, denying the injunction would not be unfair to Sycamore at all, given Brigham's concession that Sycamore can be made whole for any supposed damage through a post-hoc licensing agreement. And the public interest also strongly tips in Stone's favor: Sycamore's litigation-by-ambush tactics show that Sycamore is not actually protecting its trademark rights but is instead using the court system in an effort to smear Stone and extract an outsized payment. This strategy cannot serve as the basis for injunctive relief.

## III.   FACTUAL BACKGROUND

Stone is a "craft beer pioneer" that manufactures high quality craft beer and "helped invent the modern craft beer experience." (Complaint at 1.) "Stone innovated beer styles that are still used by nearly every brewery on the planet." (*Id.*)

In August 2021, Stone launched its "Hazy IPA," an IPA that is made in the "hazy" style. (Declaration of Aaron Roddick ("Roddick Decl.") ¶ 4.) The term "juicy" is widely used to describe IPAs. Indeed, the Brewers Association Beer Style Guidelines explicitly recognize "Juicy or Hazy India Pale Ale" as an entire product category for which it has developed guidelines."[3] Those guidelines explain that "[t]he term 'juicy' is frequently used to describe flavor and aroma attributes often present in these beers," while "[t]he term 'hazy' is frequently used to describe the appearance

---
[3] Curran Decl. Ex. 2.

of many examples of these beers." (*Id.*) Numerous breweries describe and market their IPAs as "juicy."[4]

Stone launched its Hazy IPA by prominently marking it with the STONE® brand name, the "Hazy IPA" product name, and imagery of the well-known Stone Gargoyle:



Stone's initial package for its Hazy IPA had a full-height side flap, in which the side panel of the box folded at the top edge and covered the full height of the package. (Roddick Decl. ¶ 6.) As the image above shows, Stone placed an image of its Hazy IPA can on the side flap.

In March 2022, Stone switched to a different type of box, which had a half-height flap that folded down from the top and a second flap that folded up from the bottom. (*Id.* ¶ 7.) Stone then shrunk the image of the can so that it fit on the top flap, and used "Keep It Juicy" to fill in the otherwise-empty space on the bottom flap:



---

[4] *See, e.g.,* Curran Decl. Ex. 3 (identifying dozens of IPAs that include the word "juicy" in their name).

5
Case 3:22-cv-00148-FDW-DSC   Document 17   Filed 04/20/22   Page 8 of 20

When Stone marketing personnel made this design choice, they did not know that Sycamore used the tagline KEEP IT JUICY, and they did not intend for consumers to mistake Stone's award-winning beer for a lesser-known Sycamore product. (Roddick Decl. ¶ 14.) Stone used the term "juicy," as many other breweries have done, because it captures the particular characteristics of this IPA, and its personnel selected the (very common) phrase "Keep It Juicy" entirely independently of any Sycamore tagline. (*Id.* ¶¶ 9, 13.) Likewise, Stone selected a font and color for the word "juicy" not to imitate Sycamore's design (which it had never seen), but because they matched the design aesthetic used in the words "Hazy IPA." (*Id.* ¶¶ 11, 13.)

On April 6, 2022, Sycamore filed its complaint, which it followed with an *ex parte* motion for a TRO two days later. (ECF Nos. 1, 5.) Sycamore did not contact Stone before filing these documents. Instead of making a phone call to try to resolve the issue, Sycamore directed its lawyers to launch a litigation-and-media campaign brimming with hyperbole and insinuation, and then sought the extraordinary relief of an emergency TRO—all without even informing Stone. And as Sycamore has now admitted, none of this was for the purpose of protecting its supposed trademark, but rather to strongarm Stone into making "licensing" payments into Sycamore's bank account. (Curran Decl. Ex. 1.)

## IV.　ARGUMENT

"[P]reliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). A party seeking a preliminary injunction has the burden of demonstrating that "(1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

6

Case 3:22-cv-00148-FDW-DSC   Document 17   Filed 04/20/22   Page 9 of 20

### A. Sycamore Cannot Show It Is Likely to Succeed on the Merits of Its Trademark Claims

To prevail on a trademark infringement claim, a plaintiff must establish (1) a valid trademark; (2) the mark can be protected; and (3) the defendant's use of an imitation is likely to cause confusion. 15 U.S.C. § 1114(1)(a). Sycamore cannot establish any of these elements.

#### 1. "KEEP IT JUICY" Is Invalid and Cannot Be Protected

As for the first two elements, Sycamore's alleged mark is invalid and cannot be protected. Sycamore asserts that its registration of KEEP IT JUICY with the USPTO is *prima facie* evidence of validity. (ECF 5 ("Br.") at 6.) But Plaintiff's registration is less than a year old (*see* ECF 5-2); because KEEP IT JUICY "has not been in continuous use for five consecutive years following registration, registration is not 'conclusive' evidence and therefore not incontestable." *Rebel Debutante LLC v. Forsythe Cosm. Grp., Ltd.*, 799 F. Supp. 2d 558, 568–69 (M.D.N.C. 2011). This Court must make its own determination as to the validity of the alleged mark.

"To ascertain whether a trademark is protected, the court must determine whether the mark is (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful." *Rebel Debutante*, 799 F. Supp. 2d at 568–69. Sycamore amazingly claims that KEEP IT JUICY is somehow "suggestive." (Br. at 7.) That is categorically untrue. "Suggestive" terms—like "Jaguar" for a car brand—suggest something about the product (*i.e.*, that it is fast and strong) without using those descriptive adjectives.

Here, Sycamore's claim that "juicy" is suggestive is belied by the fact that the Brewers Association explicitly recognizes "Juicy or Hazy India Pale Ale" as an entire product category. (Curran Decl. Ex. 2.) Product categories are by definition "generic." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 148 (2d Cir. 1997) (holding that "Honey Brown" is generic because "[t]here is a recognized category of beers in the marketplace known as 'brown ales'" and a Honey

7

Case 3:22-cv-00148-FDW-DSC   Document 17   Filed 04/20/22   Page 10 of 20

Brown "can be placed within that category"). This is the end of the analysis, as "[g]eneric marks are never entitled to trademark protection." *Id.* at 143.

But even if Sycamore's tagline were "descriptive," it would still be invalid: "A descriptive mark may be eligible for protection but **only if** it has acquired a 'secondary meaning' in the minds of the public." *Rebel Debutante*, 799 F. Supp. 2d at 568–69 (emphasis added). Sycamore has provided no evidence that KEEP IT JUICY has acquired a secondary meaning, and it offers nothing more than its own say-so that customers associate KEEP IT JUICY with Sycamore. Indeed, the evidence shows otherwise. As noted above, literal dozens of IPAs are sold with the word "juicy" in their name. (Curran Decl. Ex. 3.) And a simple Google search of the phrase "keep it juicy" reveals that neither Sycamore nor its products are listed until the *fifth* page of results, after a song, a podcast, a cookbook, and Alpha Juice Company, among other listings. (Curran Decl. Ex. 4.) Moreover, the phrase structure "keep it ____" is longstanding and common in the English language and in the craft beer industry.[5] Sycamore cannot merely insert the generic word "juicy" into a commonplace phrase and then claim to own that phrase. This widespread use perhaps reveals why Sycamore never bothered to use the ® or ™ symbols to protect its purported tagline—it knows that "keep it juicy" is part of the common parlance with no secondary meaning related to Sycamore.

### 2. There is No Evidence of Actual or Likely Confusion

Sycamore's motion is notably devoid of the most basic showing that trademark plaintiffs must bring to prove that an injunction is warranted. Sycamore's claims will also fail because it

---

[5] Sycamore's assertion that "customers associate the KEEP IT family with Sycamore" (Br. at 2-3) is wrong. Other brewing companies also use "KEEP IT," including Ommegang Brewery's KEEP IT CRUNCHY and Neshaminy Creek Brewing Company's KEEP IT ON THE DL. *See, e.g.*, https://www.ommegang.com/beerinfo/keep-it-crunchy/; https://www.districteastbeer.com/products/13700773/neshaminy-creek-brewing-keep-it-on-the-dl-session-ipa.

cannot show any likelihood of confusion, which is required to establish infringement. Courts assessing likelihood of confusion consider the eleven *Shakespeare* factors: (1) strength/distinctiveness; (2) similarity of the marks; (3) similarity of the goods; (4) similarity of the facilities used; (5) similarity of advertising; (6) defendant's intent; (7) actual confusion; (8) proximity of products as sold; (9) probability that plaintiff will enter defendant's market; (10) quality of defendant's product compared to plaintiff's; and (11) the sophistication of potential buyers. *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 241 (4th Cir. 1997). Sycamore cannot satisfy this analysis.

***Factor 1: The alleged mark is not strong or distinctive.*** The KEEP IT JUICY tagline is neither strong nor distinctive. Neither brewer uses it as their product or brand name. As noted, numerous brewers use the generic term "juicy," and the phrase "keep it juicy" is itself in common use. Sycamore does not provide <u>any</u> evidence suggesting that consumers associate the adjective "juicy" or the phrase "keep it juicy" with any particular IPA, rather than with the product category generally.

***Factors 2-5 & 11: There is no similarity between the products' packaging or actual use of the phrase.*** Stone has never used "Keep It Juicy" on the primary packaging (*i.e.*, the cans themselves), and the phrase is not the name of the product. Stone's Hazy IPA box is entirely distinct from Sycamore's Juiciness boxes:

 

9

Sycamore Juiciness is sold in a light blue box with images of citrus slices; it is also prominently branded with the word "Sycamore" and the leaf mark. Sycamore uses the KEEP IT JUICY tagline in very large letters inside a large dark blue circle, which is the dominant visual element on its box. In contrast, Stone Hazy IPA is sold in a purple box with distinctive and immediately recognizable images of yellow and pink abstract flowers. The packaging for Hazy IPA does not contain light blue, dark blue, or citrus slices, and it does not use the words "sycamore" or "juiciness." Its only use of "Keep It Juicy" is in relatively small letters on a side flap of the box. In addition, the box is prominently branded with the product name Stone Hazy IPA and uses imagery of the well-known Stone Gargoyle, which looks nothing like the Sycamore leaf. The two products look different, have different names, different house marks, and different logos. Because the packaging for the two products is so clearly distinct, no reasonable consumer—whether sophisticated or not—could possibly be confused.

Sycamore nonetheless tries to manufacture confusion by taking snippets of branding out of context and purporting to identify similarities between the marks. (Br. at 7.) But that approach is contrary to established law. As the Fourth Circuit has explained, courts "must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992) (a court must "look not only at the portion of the T-shirt that duplicates the Budweiser label design, but at the T-shirt as a whole as sold in the marketplace."). For that reason, "a court should not consider 'how closely a fragment of a given use duplicates the trademark,' but must instead consider 'whether the use in its entirety creates a likelihood of confusion.'" *PETA v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001). Stone's limited use of "Keep It Juicy" in the context of its overall packaging and branding is not likely to result in confusion.

*Factor 6: Stone acted in good faith.* Plaintiff's curious assertions that "Stone intended for consumers to confuse its Hazy IPA" with Sycamore's are without merit. (Br. at 8-9.) Stone is rightly proud of its award-winning Hazy IPA. Stone has no doubt that Sycamore's Juiciness is made with great care—and Stone is thrilled for Sycamore's evident success in the Carolinas and beyond—but there is no conceivable reason that Stone would want to pretend that its Hazy IPA is a Sycamore product. Stone's personnel simply did not know that Sycamore used the tagline, and they did not intend for consumers to be confused.[6] (Roddick Decl. ¶¶ 13, 14.)

*Factor 7: There is no evidence of any confusion.* Of the various *Shakespeare* factors, the "most important factor is actual confusion." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009). Sycamore has not identified the slightest bit of evidence—nor could it—suggesting any consumer was actually confused about whether a beer was a Stone Hazy IPA or a Sycamore Juiciness because both brewers used the tagline "Keep It Juicy" on a product that is routinely described as juicy.

*Factors 8-9: Sycamore does not sell Juiciness in most of the country.* Sycamore sells Juiciness in just eight states. Where both products are sold, the stark visual differences between the products' packaging prevent any theoretical confusion.[7] The Court need not consider states where Sycamore does not sell its products: there is clearly no current confusion, and Sycamore has not identified any concrete plans to enter those markets. Speculation is not enough.

---

[6] Plaintiff's assertion that Stone *must have known* about Sycamore's use of KEEP IT JUICY fails. (*See* Br. at 8.) While Stone agrees that a responsible brewer should check the USPTO website before naming a new product (or company), a brewer is not required to check literally every single word it may use on its box—no matter how generic—to see if it is claimed.

[7] Sycamore cites purported "photos of Sycamore and Stone products on store shelves" and "photos of beer taps" as exhibits (Br. at 9 (citing purported exhibits 9 and 10)), that were not actually filed or served on Stone. Having failed to submit this purported evidence, Sycamore cannot rely on it in support of its motion. In any event, Sycamore's argument that consumers will be confused when ordering a beer from a tap (Br. at 9) is baffling: sales in these environments do not include the boxes' taglines, so there can be no plausible claim of confusion.

***Factor 10: Stone's Hazy IPA is a premium, high-quality beer.*** Finally, this is not a case in which an inferior product seeks to take advantage of the brand value created by a higher-quality product. Stone's Hazy IPA is expertly crafted, highly rated, and well-reviewed. There is no possible reason Stone would intentionally masquerade it as a different beer.

For all of these reasons, Sycamore's trademark claim will fail.

### 3. Sycamore's Related Unfair Competition and State Law Claims Fail for Similar Reasons

Sycamore's tack-on unfair competition claim and state law deceptive trade practices claim will also fail for the same reasons as its federal trademark infringement claim. *See, e.g., PETA v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (describing same elements for trademark infringement and unfair competition). Here, Sycamore adduces no facts in support of its motion that would give rise to any separate grounds for an injunction under false designation of origin (false advertising) or North Carolina's deceptive trade practices statute; indeed, Sycamore acknowledges that the very same alleged trademark infringement is the basis of its unfair competition claim. (Br. at 11.) Stone did not engage in any unfair or deceptive practices—at worst, Stone inadvertently and unknowingly used a common phrase to describe its beer which countless other beer companies have used. This comes nowhere close to the standard. And Sycamore cannot show that it has suffered any injury.

### B. Sycamore Will Not Suffer Any Irreparable Injury

Sycamore also is not entitled to the extraordinary relief of a preliminary injunction because it cannot demonstrate irreparable injury, which alone ends the analysis. Sycamore founder Justin Brigham <u>admitted publicly</u> that Sycamore will not suffer any irreparable injury, conceding that monetary payments in the form of a licensing agreement would sufficiently "cover the damages" that Sycamore claims. (Curran Decl. Ex. 1.) Sycamore's concession is dispositive: where damages are compensable (*i.e.*, through monetary payments) they are, by definition, <u>not</u> irreparable. *See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir.

1995) (finding no irreparable harm where the plaintiff "offered a license" to the alleged infringer, thereby demonstrating that it was "willing to forgo its patent rights for compensation"); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (finding that a presumption of irreparable harm is "rebutted" by a party's "grant of licenses").

Brigham's admission confirmed what the record already made clear: the harms Sycamore asserts are hypothetical and speculative and, if they exist at all, fully compensable with monetary damages. Its speculative assertion that consumers may have an "inferior experience" and "think[] [Stone's] beer comes from the same brewery as Sycamore's" (Br. at 12) fails because (i) as discussed above, consumers are unlikely to be confused, and (ii) Stone's highly rated IPA is, at a minimum, not "inferior" to Sycamore's. (*See* Roddick Decl. ¶ 5.) Sycamore's unsupported contentions fall far short of the high bar necessary to justify injunctive relief.

### C. The Balance of Equities Strongly Disfavors an Injunction

The result Sycamore seeks is fundamentally inequitable: after choosing not to put the world on notice of its purported intellectual property rights by marking the KEEP IT JUICY tagline with a ® or ™, Sycamore improperly demands that Stone <u>immediately</u> stop use of a phrase that Stone did not even know Sycamore used until this suit was filed. Designing, manufacturing, filling, and shipping new boxes requires time and expense, and removing existing product from shelves is disruptive, costly, and wasteful. Even if Sycamore could establish some likelihood of success on its underlying claims (and it cannot), there is absolutely no reason Stone should be forced to undertake those steps now, at the outset of the litigation, when Sycamore has already conceded that a monetary payment would sufficiently remedy any supposed harm.

Further, Sycamore improperly seeks a *nationwide* injunction at this preliminary stage, even though it sells its products in only eight states. Sycamore asserts that it intends to expand, but offers no concrete plans or timetables on which it might do so. In the absence of any sales—or even

contemplated sales—in the rest of the country, Sycamore cannot possibly establish a harm that is "sufficiently immediate" to support an injunction just two weeks after filing suit. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 527 (4th Cir. 2003) (vacating preliminary injunction where the purported "irreparable harm" was not "sufficiently immediate").

### D. The Public Interest Counsels Strongly Against an Injunction

The public interest also strongly disfavors a business owner launching an ambush and seeking a sweeping injunction against a competitor after failing to even treat his own purported trademark as something he owns. This is especially so here, where Sycamore has prioritized media spectacle over all else—indeed, Sycamore's lawyers commented in the press about the lawsuit while actively choosing not to serve Stone with Sycamore's complaint or TRO motion.[8] Those filings are replete with false statements and misleading characterizations about Stone and its supposed "reputation" that have nothing to do with this dispute. Brigham's public statement regarding Sycamore's demand for licensing fees reveals the truth: Sycamore is more interested in smearing Stone and extracting a cash grab than it is in genuinely protecting its purported intellectual property. The public interest strongly weighs against courts legitimizing such tactics.

### E. A Significant Bond Is Necessary for Any Injunction

If the Court is nevertheless inclined to issue an injunction, it may do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Considering the cost of complying with any such injunction, the potential disruption to Stone's business, and the likelihood that Stone will prevail at trial, any bond the Court requires should be substantial, and at a minimum $100,000.

---

[8] *See* Curran Decl. Ex. 7.
14

## V. CONCLUSION

For these reasons, Stone respectfully requests that the Court deny Sycamore's motion for a preliminary injunction.

This the 20th day of April, 2022.

**JAMES, McELROY & DIEHL, P.A.**

/s/ Adam L. Ross
Adam L. Ross (NC State Bar 31766)
Jennifer M. Houti (NC State Bar 45442)
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: aross@jmdlaw.com
        jhouti@jmdlaw.com


Douglas S. Curran (*pro hac vice* pending)
BraunHagey & Borden LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Email: curran@braunhagey.com

*Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this DEFENDANT STONE BREWING CO., LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, inclusive of headings, footnotes, quotations, and citations, but exclusive of the case caption and certificates of counsel, contains no more than 4,500 words.

This the 20th day of April, 2022.

**JAMES, McELROY & DIEHL, P.A.**

/s/ Adam L. Ross
Adam L. Ross (NC State Bar 31766)
Jennifer M. Houti (NC State Bar 45442)
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: aross@jmdlaw.com
       jhouti@jmdlaw.com
*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing **DEFENDANT STONE BREWING CO., LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which will transmit notice of such filing, constituting service thereof, to all counsel of record as follows:

W. Michael Boyer
Carolina Craft Legal
6502 Birkdale Drive
Greensboro, NC  27410
Email: michael@carolinacraftlegal.com
*Attorneys for Plaintiff*

Marc J. Randazza
Ronald D. Green
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada  89117
Email: ecf@randanzza.com
*Attorney for Plaintiff*

This the 20th day of April, 2022.

**JAMES, McELROY & DIEHL, P.A.**

<u>/s/ Adam L. Ross</u>
Adam L. Ross (NC State Bar 31766)
Jennifer M. Houti (NC State Bar 45442)
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone:  (704) 372-9870
Facsimile:  (704) 333-5508
Email: aross@jmdlaw.com
          jhouti@jmdlaw.com
*Attorneys for Defendant*