UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-CV-00148-FDW-DSC

| | |
|---|---|
| SYCAMORE BREWING, LLC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>STONE BREWING CO., LLC, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Sycamore Brewing, LLC's Motion for Temporary Restraining Order and Preliminary Injunction (the "**Motion**"), (Doc. No. 5), filed April 8, 2022. On April 11, 2022, the Court entered an Order denying Plaintiff's Motion to the extent it sought a Temporary Restraining Order and deferring on ruling to the extent it sought a Preliminary Injunction. On April 20, 2022, a hearing on the Motion took place before the undersigned. After reviewing the pleadings, exhibits thereto, and applicable law, and after hearing the evidence and arguments presented by counsel at the hearing, the Court finds Plaintiff is entitled to a preliminary injunction and GRANTS the Motion with modification as set forth below.

### **Findings of Fact**

1. Plaintiff Sycamore Brewing, LLC ("**Plaintiff**") is a limited liability company founded in 2013 with its principal place of business in Charlotte, North Carolina. Plaintiff currently sells craft beer throughout North Carolina and across seven other states – South Carolina, Virginia, West Virginia, Tennessee, Ohio, Georgia, and Kentucky – and asserts it continues to expand its market.

2. Plaintiff's Juiciness IPA was introduced in 2019 and is currently sold throughout Plaintiff's

distribution area, in eight states.

3. In 2020, Plaintiff began marketing its Juiciness IPA with the slogan KEEP IT JUICY. The slogan is prominently printed on the retail packaging boxes that the beer is sold in:



4. Plaintiff owns the name and mark KEEP IT JUICY (U.S. Reg. No. 6,464,651) (the "**Mark**") and has registered the mark on the Principal Register of the United States Patent and Trademark Office (the "**USPTO**") in International Class 32 for "Beer; Beer, ale, and lager; Craft beer." The USPTO registered the mark on August 24, 2021, with a date of first use of September 12, 2020.

5. Defendant Stone Brewing Co., LLC ("**Defendant**") is a limited liability company founded in 1996 with its principal place of business in Escondido, California. As of 2022, Defendant is the ninth largest craft brewery in the United States and has distributed and sold beers in all fifty states since 2017.

6. In August 2021, Defendant launched its Hazy IPA.

7. In March 2022, after Plaintiff obtained registration of the Mark with the USPTO, Defendant changed the packaging for its Hazy IPA, adding "KEEP IT JUICY" to the bottom flap of its retail box.

8. Defendant now distributes its Hazy IPA in retail packaging boxes that prominently feature the Mark. Defendant also uses the Mark on the Hazy IPA page on its website. In addition, Defendant uses the Mark in video advertising for its Hazy IPA.





9. Defendant is using the Mark without Plaintiff's consent, approval, or authority.

## Conclusions of Law

1. To obtain a preliminary injunction, Plaintiff must establish: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest." Mountain Valley Pipeline, LLC. V. W. Pocahontas Props. Ltd. P'ship, 918 F.3d 353, 366 (4th Cir. 2019) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (internal citations omitted).

2. The Court concludes, and neither party disputes, that it has jurisdiction over the parties and subject matter of this action.

3. The Court concludes that Plaintiff has shown a likelihood of success on the merits of its claims for (1) Trademark Infringement pursuant to 15 U.S.C. § 1114; (2) Unfair Competition pursuant

to 15 U.S.C. § 1125(a); and (3) Deceptive Trade Practices pursuant to N.C. Gen. Stat. § 75-1.1.

4. To establish Trademark Infringement, Plaintiff must show that (1) it has a valid trademark; (2) its mark can be protected; and (3) the defendant's use of an imitation is likely to cause consumer confusion.  15 U.S.C. § 1114(a); Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006).

5. A certificate of registration is *prima facie* evidence of the validity of the mark, ownership by the registrant, and proper registration under the Lanham Act.  Birttingham v. Jenkins, 914 F.2d 447, 452 (4th Cir. 1990) (citing 15 U.S.C. § 1057(b)); see 15 U.S.C. § 1115(a).  Accordingly, the Mark is entitled to a presumption of validity, and Plaintiff is entitled to a presumption of ownership of the Mark.  See Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd., 799 F. Supp. 2d 558, 568-69 (M.D.N.C. 2011).  However, because KEEP IT JUICY was registered in 2021 and therefore has not been in continuous use for five consecutive years following registration, the Mark is not "conclusive" evidence and may be contested by Defendant.  Id. (citing 15 U.S.C. §§ 1115(b) ("Incontestability"), 1065 ("Incontestability of right to sue mark under certain conditions")).  In its response brief, Defendant contests the validity of the Mark.  (Doc. No. 17, pp. 7-8).  "In challenging the presumption, [Defendant] must introduce sufficient evidence, by a preponderance, to rebut the presumption of [Plaintiff's] right to exclusive use.  Id. (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 & n.4 (4th Cir. 1984)).  The Court concludes Defendant has failed to carry its burden of introducing sufficient evidence to rebut the presumption of validity and ownership of the Mark.  Moreover, the Court concludes KEEP IT JUICY on its face appears to be at least suggestive, juxtaposing three words that connote, rather than describe, Plaintiff's Juiciness IPA and *together* are not typically associated

with craft beer. Id. (citing U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002) ("Suggestive as well as arbitrary and fanciful marks are deemed inherently distinctive and receive the greatest amount of protection. A suggestive mark consists of words that connote, rather than describe, some quality or characteristic of a product or service."). Accordingly, the Court finds the Mark, which the USPTO registered on August 24, 2021, is valid and can be protected.

6. The Fourth Circuit generally balances the following relevant factors to assess the likelihood of confusion among consumers: (1) strength/distinctiveness; (2) similarity of the marks; (3) similarity of the goods; (4) similarity of the facilities used; (5) similarity of advertising; (6) defendant's intent; (7) actual confusion; (8) proximity of products as sold; (9) probability that plaintiff will enter defendant's market; (10) quality of defendant's product compared to plaintiff's; and (11) the sophistication of potential buyers. Shakespeare Co. v. Silstar Corp. of Am., 110 F.3d 234, 241 (4th Cir. 1997). Here, nearly all the Shakespeare factors weigh in favor of granting a preliminary injunction. The Mark is distinctive in the craft beer context. The similarity of the marks is astounding, and the goods are not just similar, they are the same – a craft India Pale Ale. Both parties are already in the same market, at least within Plaintiff's current distribution area of eight states in the Southeast, and utilize a network of wholesale distributors to access the retail beer markets attendant to chain retail, convenience and grocery stores, bottle shops, restaurants, and bars. In some retail locations, the two products are placed beside or above/below one another. Accordingly, the proximity of products as sold is again staggering. Moreover, the mark has been placed, as a prominent part of the packaging, on both the Juiciness IPA and Hazy IPA's retail boxes. In addition, both parties advertise their beers on social media and the Internet. Further, Defendant does not dispute that the average

consumer is not meaningfully more sophisticated simply because craft beers or premium drinks are involved. Because of Defendant's history of zealously protecting its intellectual property rights, the Court finds the sixth Shakespeare factor, Defendant's intent, is at best neutral. Similarly, the Court finds the tenth factor is neutral, as there is no evidence that either product is of a higher quality than the other. Finally, although Plaintiff does not, at this early stage, provide evidence of actual confusion, the Court highlights "[t]he test is *likelihood* of confusion; evidence of actual confusion is unnecessary." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463 (4th Cir. 1996). The Court, nonetheless, notes its confusion in discerning the marks. Based on the foregoing, the Court concludes Plaintiff has sufficiently shown a likelihood of confusion among consumers. The Court, therefore, concludes Plaintiff has shown a likelihood of success on the merits of its trademark infringement claim.

7. The test for likelihood of success on an unfair competition claim under the Lanham Act is nearly identical to the test for trademark infringement and requires Plaintiff to show: "(1) it possesses a mark; (2) the defendant used the mark; (3) defendant's use of the mark occurred in commerce; (4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods and services; and (5) defendant used the mark in a manner likely to confuse consumers." People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). It is undisputed that Defendant has used the Mark in commerce and in connection with the sale, offering for sale, distribution, or advertising of good and services. This, in conjunction with the Court's analysis of Plaintiff's trademark infringement claim above, is sufficient to satisfy Plaintiff's burden of showing a likelihood of success on the merits of its unfair competition claim.

8. In order to establish a claim under N. C. Gen. Stat. § 75-1.1, a plaintiff must allege sufficient

facts to show that (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 659 S.E.2d 442, 448 (N.C. Ct. App. 2008) (citing Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). An "unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." Id. Acts of trademark infringement are *per se* unfair and deceptive trade practices. See N.C. Gen. Stat. §§ 80-11, 12. For the reasons set forth above, then, Plaintiff has also met its burden of establishing a likelihood of success on the merits of its Unfair Competition claim.

9. The Court further concludes that Plaintiff has shown it is likely to suffer irreparable harm absent entry of an injunction. The Fourth Circuit has recognized that "irreparable injury regularly follows trademark infringement." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995) (citation omitted). Trademark infringement gives rise to irreparable injury because such "infringement primarily represents an injury to reputation." Id. (citations omitted). Based on the evidence presented, including the potential for reverse confusion and the fact that Plaintiff will never have a second chance to make a first impression, Plaintiff has met its burden of proving a likelihood of irreparable injury.[1]

---

[1] To the extent Defendant relies on High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995) and T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc., 821 F.2d 646, 648 (Fed. Cir. 1987) to support its assertion that Plaintiff's suggestion of a licensing deal during settlement negotiations that would include Defendant's immediate cessation of infringement is somehow dispositive on the issue of irreparably injury, the Court disagrees. The facts in High Tech are entirely distinguishable from the case at hand. Notably, in High Tech, the Federal Circuit found the patentee, who relied entirely on the presumption of irreparable harm, was not entitled to such presumption because the court found the record did not support a finding that the patentee was likely to succeed in proving its claim of patent infringement. High Tech, 49 F.3d at 1556. In addition, the Federal Circuit found significant the lack of commercial activity by the patentee and the nearly 17-month delay in bringing the suit after the issuance of the reexamination certificate for the relevant patent. Id. Similarly, in T.J. Smith, the Federal Circuit upheld the district court's finding of an absence of irreparable harm and held the patentee, who also relied entirely on the presumption of irreparable harm, "did not show likelihood of success in respect of infringement," waited 15 months before seeking a preliminary injunction, and "had long licensed its patent to two licensees." T.J. Smith, 821 F.2d at 648. Thus, the case law Defendant relies on is inapposite to its contention and the present matter.

10. With respect to the balance of equities and the potential harm to the parties, the Court concludes that the harm to Plaintiff outweighs the potential harm to Defendant. Plaintiff is indisputably the senior user and owner of the Mark and, as set forth above, Plaintiff has sufficiently shown a likelihood of confusion. As a result of this confusion, Defendant's use of the Mark, *inter alia*, is also likely to affect consumers' opinion of Plaintiff and/or its products. As a result, Plaintiff's reputation, goodwill, and business may be permanently damaged if Defendant continues to use the Mark and consumers associate Plaintiff with Defendant. On the other hand, Defendant has only recently – in March 2022 – changed its packaging to include the Mark. During the hearing, Defendant notified the Court of the steps it has taken to eliminate the use of the Mark in connection with Defendant's Hazy IPA. Specifically, Defendant explained it will have new retail packaging that will be ready for use by May 5, 2022. The potential harm Defendant faces, therefore, can be minimized by narrowly tailoring the preliminary injunction. Accordingly, the balance of equities tips in favor of Plaintiff.

11. Finally, the Court concludes that the entry of the requested injunction, as tailored below, serves the public interest. The purpose of trademark law is to protect the public from confusion about "the identity of the enterprise from which goods and services are purchased." AMP Inc. v. Foy, 540 F.2d 1181, 1185-86 (4th Cir. 1976). Preventing consumers from being confused and preventing trademarks from being used deceptively serves the public interest. Bowe Bell & Howell Co. v. Harris, 145 F. App'x 401, 404 (4th Cir. 2005).

12. Based on the foregoing, the Court concludes Plaintiff has sufficiently shown "(1) it is likely to

---

Moreover, the Court reiterates its concern with Defendant's proposition that the mere suggestion of a licensing deal would immediately shut the door to injunctive relief for a victim of trademark infringement. This bright line rule would impose a chilling effect on settlement negotiations; The same chilling effect that Rule 408 of the Federal Rules of Evidence seeks to prevent. See Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654-55 (4th Cir. 1988) (Discussing the strong public policy favoring exclusion of settlement negotiations to foster frank discussions).

succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest." Mountain Valley Pipeline, 918 F.3d at 366. Accordingly, Plaintiff is entitled to a preliminary injunction.

13. As indicated above, however, the Court finds the diligent and proactive measures Defendant has taken, along with the relatively short time period that the infringing products will remain in the marketplace and the financial burden that Defendant would incur in removing these products, supports narrowly tailoring the preliminary injunction so as to allow Defendant to sell off its available supply of Hazy IPA packaged in the infringing retail box that is already in the marketplace – that is, on store shelves or in the possession of its distributors – provided, however, that Defendant shall use its best efforts to ensure a label is applied as soon as practicable to all infringing boxes of Defendant's Hazy IPA that are already in the marketplace. See Lance Mfg., LLC v. Voortman Cookies Ltd., 617 F. Supp. 2d 424, 434-35 (W.D.N.C. 2009).

IT IS THEREFORE ORDERED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. No. 5), is GRANTED WITH MODIFICATION to the extent it seeks a preliminary injunction.

Defendant is HEREBY ENJOINED as follows:

1. Except as set forth below, Defendant, its directors, officers, employees, representatives and agents, and any persons or entities in active concert or participation with them having actual notice of this Preliminary Injunction, are hereby immediately enjoined nationwide from using the KEEP IT JUICY name and mark, or confusingly similar variations thereof.

2. Defendant may sell off its available supply of Hazy IPA packaged in the infringing box, provided that Defendant shall use its best efforts to ensure a label is applied to all infringing boxes as soon as practicable. Defendant may use any reasonable label color that prohibits consumers from reading through the label. If Defendant so wishes, Defendant may also petition the Court to allow the label to include a new, non-infringing phrase or slogan.

3. The injunction stated herein shall become effective only upon the posting of a cash bond in the amount of fifty thousand dollars ($50,000.00) with the Clerk of Court for the United States District Court for the Western District of North Carolina for the payment of such costs and damages as may be incurred by Defendant should it ultimately be found to have been wrongfully enjoined. Upon such posting of bond, this Order shall remain in effect until a final disposition of this case, until the Court revises the Order, or until the parties agree otherwise.

IT IS SO ORDERED.

Signed: April 21, 2022

Frank D. Whitney
United States District Judge